UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CECILIA S. CLAUDIO,

                Plaintiff,

v.

PATRICK HICKEY; THE CITY OF
WATERTOWN; WATERTOWN POLICE;
SHERIFF; STATE POLICE; CITY
COUNCIL; and NEIGHBORHOOD WATCH,

                Defendants.

5:24-CV-0758
(DNH/ML)

---

APPEARANCES:

CECILIA S. CLAUDIO
  Plaintiff, *Pro Se*
656 Mill Street
Watertown, New York 13601

OF COUNSEL:

MIROSLAV LOVRIC, United States Magistrate Judge

## DECISION and ORDER

### I.    INTRODUCTION

Plaintiff Cecilia S. Claudio ("Plaintiff") commenced this action *pro se* on June 11, 2024, by the filing of a complaint. (Dkt. No. 1.) Plaintiff did not pay the filing fee for this action and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) The undersigned denied Plaintiff's IFP application as incomplete. (Dkt. No. 4.) On July 2, 2024, Plaintiff filed an amended IFP application. (Dkt. No. 5.) For the reasons set forth below, Plaintiff's amended IFP application is denied.

II.     **PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS***

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee. 28 U.S.C. § 1915(a)(1).[1] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

---

[1]     The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting his assets. 28 U.S.C. § 1915(a)(1).

Here, Plaintiff's amended IFP application states that Plaintiff's gross pay or wages are $17.50 per hour and Plaintiff's take-home pay or wages are $700 per week. (Dkt. No. 5 at ¶ 2.) This equates to $36,400 in take-home pay per year. In addition, Plaintiff's amended IFP application states that Plaintiff receives $3,877.22 per month in veteran's affairs ("VA") disability. (*Id.*) As a result, combining Plaintiff's take-home pay and the VA disability, her yearly income is $82,926.64.

The United States Department of Health and Human Services publishes yearly Poverty Guidelines. Those guidelines reflect that, for 2024, the poverty threshold for a household of three[2] is $25,820. *See* United States Dep't of Health & Human Servs., https://aspe.hhs.gov/poverty-guidelines (last visited July 3, 2024).[3]

In addition, Plaintiff's application states that Plaintiff has $1,000.00 in cash or in a checking or savings account. (Dkt. No. 5 at ¶ 4.) Moreover, "Plaintiff's application does not disclose any extraordinary or unusual expenses, debts or financial obligations, other than ordinary cost-of-living expenses, such as property taxes, utilities, insurance, and food." *David v. U.S. Envtl. Prot. Agency*, 19-CV-0064, 2019 WL 1004706, at *2 (N.D.N.Y. Jan. 29, 2019) (Peebles, M.J.).

---

[2]  The IFP application indicates that Plaintiff's minor children, G.V., T.A., are 100% dependent on Plaintiff for support. (Dkt. No. 5 at ¶ 7.) Notwithstanding Plaintiff's delineation that these children are minors, she indicates that her son attends St. John Fisher college. (*Id.*)

[3]  The Poverty Guidelines do not specify whether they measure income before or after taxes. This distinction is irrelevant in this case.

In this instance, I find that Plaintiff possesses sufficient funds to pay the $405.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's amended motion to proceed in this case IFP.

If Plaintiff wishes to proceed with this action, Plaintiff must comply with the filing fee requirements **within thirty (30) days** of the filing date of this Decision and Order. Plaintiff is advised that failure to timely comply with this Decision and Order will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that should Plaintiff wish to proceed with this action, Plaintiff must pay the $405.00 filing fee **within thirty (30) days** from the date of the filing of this Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed; and it is further

**ORDERED** that the Clerk shall serve this Decision and Order on Plaintiff by mail, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Dated: July  8, 2024
       Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge

Case 5:24-cv-00758-DNH-ML Document 6 Filed 07/08/24 Page 5 of 10

David v. U.S. Environmental Protection Agency, Not Reported in Fed. Supp. (2019)

KeyCite Red Flag - Severe Negative Treatment
Report and Recommendation Adopted in Part, Rejected in Part by David v. U.S. Environmental Protection Agency,  N.D.N.Y.,  March 1, 2019

2019 WL 1004706
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

DAVID f/k/a David J. Forjan, Plaintiff,
v.
The U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.

Civil Action No. 3:19-CV-0064 (DNH/DEP)
|
Signed 01/29/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: DAVID, Pro Se, 2633 State Route 17C, Barton, NY 13734.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

*1 *Pro se* plaintiff David f/k/a David J. Forjan brings this citizen suit against the United States Environmental Protection Agency ("EPA") and three high ranking officials employed by that agency, alleging violations of, *inter alia*, the Toxic Substances Control Act, *see* 15 U.S.C. § 2601, *et seq.*, the Clean Water Act, *see* 33 U.S.C. § 1251, *et seq.*, the Clean Air Act, *see* 42 U.S.C. § 7401, *et seq.*, and the Food Quality Protection Act, [1] *see* Pub. L. No. 104-170, 110 Stat. 1489. Accompanying plaintiff's complaint is a motion requesting permission to proceed in the action *in forma pauperis* ("IFP"). For the reasons set forth below, plaintiff's IFP application is denied, and I recommend that his complaint be dismissed, with leave to replead.

I. BACKGROUND
Plaintiff commenced this action on January 17, 2019. Dkt. No. 1. Although plaintiff denominated his action as arising under 42 U.S.C. § 1983, it is clear from his lengthy—and at times nonsensical—complaint that he is attempting to bring a citizen suit to enforce various environmental laws and regulations. *See generally* Dkt. No. 1.

Plaintiff alleges that there is a "probability" that he and his dog, Annie, are being poisoned by the widespread use of pesticides, herbicides, and other chemical agents, which have been, and continue to be, approved for the public's use by defendants, the United States EPA; Andrew Wheeler, Acting Administrator of the EPA; Richard Keigwin, Jr., Director of the EPA's Office of Pesticide Program; and Peter D. Lopez, Regional Administrator of the EPA. *See generally id.* Plaintiff seeks declaratory and injunctive relief. *Id.* at 15-16.

II. DISCUSSION

A. Plaintiff's IFP Application
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a).[2] A court is authorized, however, to permit a litigant to proceed IFP if it determines that he or she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).

" 'The purpose of [section] 1915 is to insure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Naik v. Modern Mktg. Concepts, Inc.*, No. 3:17-CV-0613, 2017 WL 9509955, at *1 (N.D.N.Y. Sept. 19, 2017) (Peebles, M.J.) (quoting *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984) ); *see also Harlem River Consumers Coop, Inc. v. Associated Grocers of Harlem, Inc.*, 71 F.R.D. 93, 96 (S.D.N.Y. 1976). "The decision of whether to grant an application to proceed IFP rests within the discretion of the court. *Naik*, 2017 WL 9509955, at *1 (citing *Monti*, 600 F. Supp. at 113).

*2 Section 1915(a)(1) does not set financial guideposts for determining IFP eligibility, but provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); *see also Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) ("We think an [IFP application] is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." (quotation marks and alteration omitted) ). A plaintiff does not need to demonstrate abject poverty to qualify for IFP status. *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citing *Adkins*, 335 U.S. at 339); *accord Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000). Indeed, "no party must be made to choose between abandoning a

Case 5:24-cv-00758-DNH-ML   Document 6   Filed 07/08/24   Page 6 of 10

David v. U.S. Environmental Protection Agency, Not Reported in Fed. Supp. (2019)

potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In this instance, plaintiff's IFP application sets forth a somewhat murky financial picture. Plaintiff indicates that he is self-employed from his New York residence, but does not disclose that he receives any income from that self-employment. Dkt. No. 2 at 1. After failing to complete several questions regarding his sources of income over the past twelve months, plaintiff indicates that he receives $1,868 per month in disability and workers' compensation benefits, which is nearly double the amount of the current poverty income threshold level as reflected in the guidelines published by the U.S. Department of Health and Human Services.[3] *Id.*

Plaintiff's application does not disclose any extraordinary or unusual expenses, debts, or financial obligations, other than ordinary cost-of-living expenses, such as property taxes, utilities, insurance, and food. Dkt. No. 2 at 2. Although plaintiff's regular monthly expenses exceed his monthly income, in part due to a moderate amount of credit card debt and a small loan, in his application, he discloses that he possesses $27,000 in savings and $65,000 in other assets, including a home in New Mexico. *Id.* at 2. Plaintiff, who in his complaint alleges that he resides in New York, does not indicate in the IFP application whether his New York home is among his assets or whether he has any expenses associated with that residence. *See generally id.*

In this instance, despite some unanswered questions regarding plaintiff's finances, I find that he possesses sufficient funds to pay the $400.00 filing fee to commence this action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339). Accordingly, I will deny plaintiff's motion to proceed in the case IFP. To the extent plaintiff may wish to renew his request to proceed IFP, and given the court's unanswered questions about his financial situation, any request to proceed without prepayment of fees must include a fully completed long form *in forma pauperis* application (AO 239).

B. Plaintiff's Complaint

1. Standard of Review

Ordinarily, my denial of plaintiff's IFP application would end the court's discussion, and plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that plaintiff's complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

**\*3** Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) ) (quotation marks and emphasis omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis of Claims Against Defendants Wheeler, Keigwin, and Lopez

**\*4** As was noted above, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2). As a result, when a complaint names a defendant in the caption, "but contains no allegations indicating how the defendant violated the law or injured the plaintiff," any claims against that defendant are subject to dismissal. *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) ); *Gilfus v. Adessa*, No. 04-CV-1368, 2006 WL 2827132, at \*4 (Sept. 30, 2006) (Munson, J.).

Here, beyond naming defendants Wheeler, Keigwin, and Lopez in the caption and first paragraph of his complaint, *see* Dkt. No. 1 at 1-2, plaintiff has failed to set forth any factual allegations as to those defendants. In the absence of the requisite specificity with respect to how each defendant violated the law or caused damage to plaintiff, the court recommends that the complaint be dismissed against those defendants.

### 3. Analysis of Claims Against the EPA

Plaintiff's complaint is comprised of forty-four pages and 228 paragraphs of incoherent prose and data culled from news articles regarding the use of pesticides and other chemical agents. By way of one example, in the "[i]ntroduction" section of the complaint, plaintiff alleges as follows:

[¶ 4] Father says, be still and know that I am God,

Father says, be still and be filled with my peace,

Father says, be still and know that I am the Lord,

Father says, and remain hereafter within me.

Father says, I created everything.

Father says, like Insects and Birds and Frogs and Rabbits and Possums and Owls and Hawks and Eagles and pets and human Children.

Father says, l created everything.

Father says, they are all my children.

[¶ 5] Father says, Defendants are endangering and killing them all. Father says, with pesticides. Father says, your Honor, we must stop allowing the use of pesticides. Father says, your Honor, pesticides are poisons.

[¶ 6] Father says, your Honor, Birds and Frogs eat the poisoned Insects, and the more they eat, the more the poisons accumulate in them, and the poisons kills them too. Father says, your Honor, bigger Birds and Mammals, including some pets, sometimes eat poisoned Birds and Frogs, and Rabbits eat poisoned grasses and plants, and that poison accumulates in them, or your pets, and will harm and kill them. Father says, your Honor, like the Raptors and Earth-bound Mammals that eat poisoned Frogs and Birds, that poison kills them too.

Dkt. No. 1 at 2 (errors in original). Thereafter, in a 130-paragraph factual "addendum" to the complaint, *see* Dkt. No. 1 at 17-44, plaintiff alleges:

[¶ 1] It is startling to see how heavily strawberries are contaminated with residues of hazardous pesticides, but even more shocking is that these residues don't violate the weak U.S. laws and regulations on pesticides in food, said Sonya Lunder, EWG Senior Analyst. The EPA's levels of residues allowed on produce are too lax to protect Americans' health. They should be updated to reflect new research that shows even very small doses of toxic chemicals can be harmful, particularly for young children.

[¶ 2] This study is one of many that shows we know very little about the repercussive effects of pesticides once released into the environment, said Ruth Kerzee, executive director of the Midwest Pesticide Action Center, who was not involved in the study, We are told these compounds break down rapidly when exposed to sunlight and, yet, this study shows persistence in the environment long after applications.

**\*5** [¶ 3] Sidelined (U.S. EPA) children's health official Dr. Ruth Etzel says EPA under Trump believes kids are disposable, they don't matter - CBS News[.]

Dkt. No. 1 at 17 (internal quotation marks omitted).

Although certain citizen enforcement suits are permissible against the EPA, as the complaint is currently drafted, the court is unable to meaningfully analyze, in accordance with 28 U.S.C. § 1915(e), whether and to what extent plaintiff has pleaded a colorable claim against the EPA. [4] *See generally* Dkt. No. 1. Plaintiff's prolix pleading places an unjustified burden on the court " 'to select the relevant material from a mass of verbiage.' " *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969) ).

Accordingly, I recommend the complaint be dismissed as frivolous. *See, e.g., Gillich v. Shields*, No. 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2018 WL 2926302, at \*3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino, J.); *Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at \*5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin*, 861 F.2d at 42 ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*6** In this case, it is not clear whether better pleading would permit plaintiff to assert a cognizable cause of action against the EPA. Out of deference to his *pro se* status, however, I recommend that plaintiff be granted leave to amend his complaint.

If plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as defendants are involved in the allegedly unlawful activity. Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See*

Case 5:24-cv-00758-DNH-ML   Document 6   Filed 07/08/24   Page 9 of 10

David v. U.S. Environmental Protection Agency, Not Reported in Fed. Supp. (2019)

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

III. SUMMARY, ORDER, AND RECOMMENDATION

For the reasons set forth above, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) is DENIED without prejudice. In the event this report is adopted and plaintiff is granted leave to amend his complaint, any amended complaint must be accompanied by either (1) the full filing fee or (2) a new request to proceed in this action without prepayment of the filing fees in the form of a completed AO 239; and it is further respectfully RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1004706

**Footnotes**

| | |
|---|---|
| 1 | The Food Quality Protection Act amended both the Federal Food, Drug, and Cosmetic Act, *see* 21 U.S.C. § 301, *et seq.*, and the Federal Insecticide, Fungicide and Rodenticide Act, *see* 7 U.S.C. § 136, *et seq.* |
| 2 | The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002). |
| 3 | Those guidelines reflect that effective January 11, 2019, for an individual residing within the forty-eight contiguous states and the District of Columbia, the threshold is $12,490. U.S. Dep't of Health & Human Servs., *Poverty Guidelines*, https://aspe.hhs.gov/poverty-guidelines (last visited Jan. 24, 2019). |
| 4 | For example, the citizen suit provision of the Clean Water Act enables citizens to bring suit to force the Administrator of the EPA to perform non-discretionary duties. 33 U.S.C. § 1365(a)(2); *see generally Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). Here, plaintiff simply alleges that the EPA has violated the spirit of the Clean Water Act because there is a probability that he and his dog are being poisoned by the widespread chemical agents. As a result, it is not clear from plaintiff's complaint what mandatory duty he alleges that the EPA has allegedly failed to perform pursuant to the Clean Water Act.<br><br>As a separate issue that is beyond the scope of this order, report, and recommendation, I note that citizen enforcement suits under the Toxic Substances Control Act, the Clean Water Act, and the Clean Air Act are each subject to certain pre-suit notice requirements. 15 U.S.C. § 2619(b)(2) (Toxic Substances Control Act); 33 U.S.C. § 1365(b)(2) (Clean Water Act); 42 U.S.C. § 7604(b)(2) (Clean Air Act). There is no indication in plaintiff's complaint that he has met those requirements. |
| 5 | If you are proceeding pro se and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the |

David v. U.S. Environmental Protection Agency, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00758-DNH-ML   Document 6   Filed 07/08/24   Page 10 of 10

report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.